**UNITED STATES of America, Appellee,**

v.

**Norman John NORTON, Appellant.**

**No. 80–1746.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 8, 1980.

Decided Jan. 29, 1981.

Scott F. Tilsen, Asst. Federal Public Defender, D. Minn., Minneapolis, Minn., for appellant.

Thomas K. Berg, U.S. Atty., Sheryl Ramstad Hvass, Asst. U.S. Atty. argued, Minneapolis, Minn., Peter Bachman, Legal Intern, for appellee.

Before HEANEY, ROSS and McMILLIAN, Circuit Judges.

HEANEY, Circuit Judge.

Norman John Norton was named in a two-count indictment charging him with possession of a firearm by a felon in violation of 18 U.S.C.App. § 1202(a)(1) (Count I) and with possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871 (Count II). Norton waived his right to a jury trial on Count I, which was tried to the court at the same time as Count II was tried to the jury. The

jury found Norton guilty of Count II and he was sentenced to a term of five years imprisonment. The district court found Norton guilty of Count I and sentenced him to a two-year, concurrent term.

The facts of this case are relatively simple. On January 18, 1980, officers of the Hennepin County Sheriff's Department executed a search warrant on an apartment occupied by Norton and two others, Ron Robins and Brenda Boehm. At the time of the search, there were nine people in the apartment. Boehm was the only one of the three apartment residents present. The sawed-off shotgun that is the subject of the charged offenses was discovered in the closet in Norton's bedroom during the course of the search.

Because stipulations covered all other elements of the crimes charged, the only issue at trial was whether Norton was in possession of the shotgun.[1] The most probative evidence tending to show that Norton possessed the gun was its location in his closet next to his personal papers; the testimony of one witness that Norton had stated, about three weeks prior to the search, that he was not afraid of getting "ripped off" because he had a shotgun in the bedroom; and the testimony of another witness that on an earlier occasion he had seen the top of a shotgun barrel sticking up from behind the bed in Norton's room.

On appeal, Norton contends that he was denied a fair trial for two reasons: (1) the prosecutor's closing argument included improper, inflammatory and prejudicial statements, and (2) the government violated a pretrial discovery agreement concerning the identity and testimony of certain trial witnesses. We agree with Norton that the statements of the prosecutor require a reversal of the conviction on Count II of the indictment, but we affirm the conviction on Count I.

## I

Norton argues that he was denied a fair trial because of the following portion of the prosecutor's closing argument:

[Prosecutor,] MS. HVASS:

\* \* \* \* \* \*

Now this country did not have national firearms registration back in the founding fathers' day and even to this day it has been believed that possession of a gun for self defense or recreational use is a right of the democracy. So congress has not required that individuals possession [sic] all firearms register them, nor has congress banned people from having firearms. Congress has drawn a very narrow line prohibiting this type of weapon with no recreational use and only one purpose.

[Defense Counsel,] MR. TILSEN: I will object to this argument on the purpose of the statute.

THE COURT: Overruled, you may go ahead.

MS. HVASS: And, only one purpose, and congress has deemed it necessary to control that type of weapon and control its access on the streets because it has got one purpose and that is to assault.

MR. TILSEN: I will object to that on the same grounds.

THE COURT: Same ruling.

MS. HVASS: If you will notice the length of the barrel, the effect of that is that it hits a very large area. As you put a projectile in it the projectile sprays and covers a very large area. It is not good for target practice, it is not good for hunting, it is good for assault and assault only and for that reason congress has considered it to be a dangerous weapon and one that requires strict regulation; that regulation being that anyone who possesses that sawed-off shotgun has to have it registered to him in the National Firearms Registration and Transfer Record and Norman Norton didn't have that gun registered to him.

---

1. The government introduced, in camera, a certified copy of Norton's prior state felony conviction. The parties stipulated that the shotgun had been manufactured in Connecticut, that it was fully operable and that it was of the type required to be registered under 26 U.S.C. §§ 5861(d) and 5871, but was not so registered.

■ This statement was clearly improper. This Court has previously held that testimony concerning the purpose of the Gun Control Act has little or no probative value in a trial for a violation of the Act. *United States v. Bell*, 573 F.2d 1040, 1045 (8th Cir. 1978); *see United States v. Fullmer*, 457 F.2d 447, 449 (7th Cir. 1972). There is even less justification for allowing the prosecutor to "testify" in closing argument about the statute's purpose. Moreover, the government admits that the only proper issue for the jury's consideration was whether Norton was in possession of the weapon; indeed, the prosecutor so stated in her closing argument. Even at the time she made the remark about the statute's purpose, therefore, the prosecutor knew that it had absolutely *no* relevance to the issue at trial. Its sole purpose was to create prejudice in the minds of the jurors, and the trial court erred in permitting it to be made.[2]

The government contends that, even if the closing argument were improper, the conviction should be upheld because the evidence against Norton is overwhelming. We cannot agree. Much of the testimony indicating that Norton possessed the gun was equivocal, and a defense witness rebutted, at least in part, the testimony that Norton had said he had a shotgun in the bedroom. Our review of the record compels us to conclude that the jury verdict could reasonably have been affected by the improper argument. *See United States v. King*, 616 F.2d 1034, 1040 (8th Cir.), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980). Accordingly, Norton's conviction on Count II of the indictment is reversed.[3]

## II

Norton also contends that he was denied a fair trial because the government breached a promise to keep its file open to defense counsel. This promise, Norton asserts, is found in the following statement contained in the government's response to pretrial motions:

The Government showed counsel for the defendant its entire file at the time of the Arraignment * * *. Since then, the Government has reiterated its willingness to allow the defense further review of the file, and has furnished counsel for the defendant with any and all copies of documents requested.

\* \* \* \* \* \*

In view of the foregoing facts, the Government respectfully contends that it has fully complied with Rule 16 of the Federal Rules of Criminal Procedure and, thus, with defendant's Motion for Discovery and Inspection.

Norton argues that the government violated the promise to permit "further review" of the file when, about one week prior to trial, it refused to reveal to defense counsel the names and substance of the expected testimony of several witnesses. Norton claims that he was prejudiced because his attorney had no opportunity to interview three government witnesses prior to trial and because he had to cross-examine the government witnesses before he had a chance to talk to Mark Dillenburg, a person whose identity was known to the government prior to trial. Dillenburg later testified for the defense, contradicting in part statements made by a government witness.

■ While we cannot condone the government's unexplained reversal of its position concerning access to information in its file, we are satisfied that the prosecutor's action did not deny Norton due process of law. The government investigators became aware of the witnesses in the week

---

2. The government contends that, even if the district court erred in permitting the prosecutor to tell the jury about the purpose of the statute, the error was corrected by the court's charge. While discussing the elements of a violation of the Gun Control Act, the court stated, in passing, "Now you need not concern yourself as jurors with the reason for this particular stat-

ute." Under the circumstances of this case, this statement was not sufficient to prevent Norton from being prejudiced by the improper argument.

3. Error in the argument to the jury, of course, has no effect on Count I, which was tried to the court.

prior to trial. The prosecutor informed defense counsel at that time that she had three additional witnesses and that their identities and any statements they had given would be made available to defense counsel prior to trial. Yet, the defendant made no discovery motions, he did not ask for a continuance nor did he otherwise bring the matter to the attention of the trial court until the first day of trial. When the district judge was apprised of the situation, he directed the government to release the names of the witnesses and to make them available for interviews with defense counsel.

Similarly, Dillenburg's name was divulged to defense counsel on the morning of the first day of trial. Counsel made no real effort to find Dillenburg, however, until midway through the second day of trial, at which time the court granted a continuance so that Dillenburg could be located. Trial resumed on the following day, and Dillenburg testified for the defense.

In our view, the government released to Norton all information that was required by law; any slight prejudice that may have occurred when the government "closed" its file must be seen as a result of defense counsel's inaction, and it certainly was not of sufficient consequence to deny Norton a fair trial.

The conviction on Count I is affirmed; the conviction on Count II is reversed.

ROSS, Circuit Judge, dissenting.

I agree with Judge Heaney's opinion with one exception. I do not agree that the allegedly improper remarks made by the prosecutor could reasonably have affected the jury verdict of guilty. I would therefore affirm on both counts.

In his opinion Judge Heaney relies on two Eighth Circuit cases: *United States v. Bell,* 573 F.2d 1040, 1045 (8th Cir. 1978), and *United States v. King,* 616 F.2d 1034, 1040 (8th Cir.), *cert. denied,* 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980). Interestingly enough in both cases similar remarks were held to be nonprejudicial.

In *Bell, supra,* the remarks were made in testimony by a government agent over objection of the defense attorney. Concededly the evidence was stronger against Bell than it was in this case against Norton. However, in my opinion, the evidence was sufficiently strong against Norton, as hereinafter set forth, to justify a determination that the remarks were nonprejudicial and could not reasonably have affected the jury verdict. In *King, supra,* the remarks expressed a personal belief by the prosecutor that King was guilty but were held to be nonprejudicial in the face of strong evidence. In *United States v. Stevens,* 509 F.2d 683, 686 n.1(f) (8th Cir. 1974), *cert. denied,* 421 U.S. 989, 95 S.Ct. 1993, 44 L.Ed.2d 479 (1975), not cited by the majority, Chief Judge Lay summarily dismissed a similar claim by Stevens in footnote 1(f), as follows:

(f) The government attorney used prejudicial comments in his closing argument. The comments were objected to and the court sustained the objections and instructed the jury to disregard them. The comments were (1) that Miss White, the defendant's witness, was the defendant's girlfriend, and (2) that sawed-off shotguns could be classified with "machine guns, grenades, and bazookas." The comments do not constitute such prejudice that a jury would be likely to be unduly influenced by them. No motion for mistrial was made and the court's charge under the circumstances was all that was required.

In this case the conviction should not be reversed for two reasons: First, the comments which were made "do not constitute such prejudice that a jury would be likely to be unduly influenced by them." *Id.* In my opinion, the remarks which were made were relatively harmless and would not influence in any way the determination by the jury of whether Norton had possession of the sawed-off shotgun. Some members of the jury were most likely already familiar with the reason for cutting off the barrel.

As in *Stevens,* no motion for mistrial was made and the court specifically charged the

jury that "you need not concern yourself as jurors with the reason for this particular statute." The court then read the statute to them. The court also emphasized at great length the importance of the possession issue. I am satisfied that the jury knew that possession was the only issue to be decided and that the purpose of the statute had no bearing on its determination of that issue.

The second reason I believe the error, if any, was nonprejudicial is that the evidence of possession of the gun by Norton, though partially circumstantial, was very convincing. The government established these facts:

1. The gun was found pursuant to a valid search warrant in Norton's room. No other person occupied his room.

2. Norton had admitted owning a shotgun to witness Mark Farnham after Farnham asked if he (Norton) wasn't afraid to leave money around the apartment.

3. Witness Sorenson testified that he had earlier seen the sawed-off shotgun in Norton's bedroom. He later conceded he had seen only the top portion of the shotgun when it was resting back of a bed, but he identified it as the same gun.

In short, I agree with the district judge when he stated in his post-conviction order of July 3, 1980, as follows: "The court is satisfied that a fair trial was had by the defendant, and that neither the interests of justice nor claimed prejudicial misconduct justify the granting of a new trial." The result reached by the majority in this case is, in my opinion, erroneous and in clear contradiction to the result reached by Chief Judge Lay in *United States v. Stevens, supra.*