UNITED STATES of America, Appellee,

v.

John FULLER, Appellant.

No. 88–2544.

United States Court of Appeals, Eighth Circuit.

Submitted May 9, 1989.

Decided Oct. 5, 1989.

---

R. Thomas Day, St. Louis, Mo., for appellant.

Richard L. Poehling, St. Louis, Mo., for appellee.

Before ARNOLD, FAGG, and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

John Fuller was convicted of two federal firearm violations and received concurrent fifteen and ten year sentences. In challenging these convictions, Fuller alleges three trial errors: the government used its peremptory strikes unconstitutionally, the trial court improperly allowed the admission of evidence of other crimes, and the prosecution's closing argument violated Fuller's right to a fair trial. Fuller also appeals his sentence, questioning the constitutionality of the Federal Sentencing Guidelines and the applicability of an enhancement provision to his sentence. We affirm.

A jury found Fuller guilty on both counts charged: Count I, possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Supp. V 1987), and Count II, possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) (1982). The District Court[1] sentenced Fuller to fifteen years and ten years imprisonment on Counts I and II, respectively, the terms to run concurrently, plus a special assessment of $50 per count. On Count I, Fuller was sentenced under 18 U.S.C. § 924(e) (Supp. V 1987), which mandates a minimum fifteen year sentence upon the conviction of a defendant who has three or more previous convictions for violent felonies or serious drug offenses. A "violent felony" includes, among others, a crime that is punishable by more than one year in prison and involves force or threatened force or "is burglary." 18 U.S.C. § 924(e)(2)(B). Because of Fuller's 1975

1. The Honorable John F. Nangle, Chief Judge, United States District Court for the Eastern District of Missouri.

conviction for robbery and his 1975 and 1980 burglary convictions, he was sentenced under this enhancement provision.

## I.

Fuller, who is black, maintains that the government used its peremptory strikes systematically to exclude members of Fuller's race from his jury in violation of his equal protection rights. Fuller used none of his ten peremptory strikes against members of his own race. The government used two of its six peremptory strikes against black venire members, leaving three black jurors. The District Court ruled that Fuller had not shown a prima facie case of purposeful discrimination under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Fuller argues that the District Court erred in failing to find a prima facie case, and that the court should have compelled the government to come forward with a racially neutral explanation for its exclusion of two black jurors. We disagree. While Fuller is a member of a cognizable racial group and the government did use peremptory challenges to remove two of five potential jurors who were members of that group, we are unconvinced that Fuller has made out a prima facie case.

It is clear that this Court reviews a district court's finding on the government's neutral explanation and the ultimate finding of purposeful discrimination *vel non* as questions of fact, giving great deference to the district court. *United States v. Ross*, 872 F.2d 249, 250 (8th Cir.1989) ("Under these circumstances, the district court's finding that the government's reasons for striking the two blacks were permissible under *Batson* is not clearly erroneous."); *United States v. Davis*, 871 F.2d 71, 73 (8th Cir.1989) ("Because a district court's finding of purposeful discrimination with regard to the use of peremptory strikes

involves credibility evaluations, a reviewing court should ordinarily give those findings great deference."); *see also Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. What is not so evident from our cases is whether we review the district court's ruling on the prima facie case issue as a finding of fact or *de novo* as a question of law.[2]

■ In this case, however, it is unnecessary for us to articulate the standard, as Fuller failed to prove a prima facie case under any standard of review. He relies solely on the exclusion of two out of five potential black jurors, presenting no other evidence leading to an inference of discrimination. We have remanded cases, requiring the trial courts to proceed to the next step in the *Batson* analysis, where the only record evidence of discrimination was a head count of this sort. *E.g., United States v. Battle*, 836 F.2d 1084 (8th Cir. 1987) (prosecutor used five of his six peremptory strikes against black veniremen, leaving only two blacks in the venire). This Court has noted, however, that *"Batson* does not require that the government adhere to a specific mathematical formula in the exercise of its peremptory challenges." *United States v. Montgomery*, 819 F.2d 847, 851 (8th Cir.1987) (no prima facie case where two of government's six peremptory strikes were used to eliminate half of the black veniremen); *see also United States v. Ingram*, 839 F.2d 1327, 1329–30 (8th Cir.1988) (no prima facie case where prosecution used one of its peremptory strikes against a black venireman, leaving one who served on the jury panel); *United States v. Porter*, 831 F.2d 760, 767–68 (8th Cir.1987), *cert. denied*, 484 U.S. 1069, 108 S.Ct. 1037, 98 L.Ed.2d 1001 (1988) (no prima facie case where government struck one of two potential black jurors with one of its six peremptory strikes).

---

**2.** In *Batson*, the Supreme Court said, "We have confidence that trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors." 476 U.S. at 97, 106 S.Ct. at 1723. This suggests that, since trial judges have more expertise than appellate judges in jury selection matters, trial judges are better able to adjudicate the prima facie case issue, and therefore their determinations of this issue should be given great deference.

Here the District Court ruled that the government's use of two of its six peremptory challenges against blacks, leaving three black jurors who actually served on the jury, did not establish a prima facie case of purposeful racial discrimination. Fuller points to no other facts or circumstances that would support the inference of a prima facie case. Under *Batson* and our cases, in these circumstances we cannot say that the District Court erred in not requiring the government to go forward with a neutral explanation.

## II.

Fuller also contends that the District Court improperly admitted drug paraphernalia seized (pursuant to a warrant whose validity is unchallenged on appeal) at the apartment where Fuller was arrested in possession of a sawed-off shotgun. The evidence was not part of the government's case in chief. It was offered by the prosecution after Fuller's estranged wife, who lived in the apartment, testified as a defense witness that Fuller was there simply to visit his children. On cross-examination, she denied knowledge of any drug paraphernalia found there with the exception of a scale. The prosecution then sought to introduce the seized items in its rebuttal evidence. The District Court excluded several capsules of heroin found in the apartment, ruling that prejudice outweighed probative value, but admitted the drug paraphernalia.

Our review of the admissibility of evidence is under the abuse of discretion standard. *United States v. Marshall*, 683 F.2d 1212, 1215 (8th Cir.1982). "In balancing the prejudicial effect and probative value, great deference is given to the district judge's determination." *United States v. DeLuna*, 763 F.2d 897, 913 (8th Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). While the record before us is unclear as to the basis for the admission of the evidence, we find no abuse of discretion in the District Court's ruling.

■ Fuller contends that the trial court should have excluded the drug paraphernalia under Rule 404(b) of the Federal Rules of Evidence as inadmissible evidence of other crimes. The government counters that it offered the evidence to impeach Fuller's wife, pointing out that only after Mrs. Fuller, on cross-examination, denied knowledge of most of the drug paraphernalia were the items seized from her apartment introduced into evidence. The government's argument is persuasive. We believe the drug paraphernalia properly could have been admitted for the purpose of impeaching Mrs. Fuller's credibility as a witness.

■ We also believe that this evidence was admissible under Rule 404(b) to show Fuller's motive, given the close and well-known connection between firearms and drugs. "Firearms are known 'tools of the trade' of narcotics dealing because of the dangers inherent in that line of work." *United States v. Simon*, 767 F.2d 524, 527 (8th Cir.) (drug related evidence admitted in trial for possession of firearm by convicted felon) (citing *United States v. Milham*, 590 F.2d 717, 721 (8th Cir.1979) (firearm received in evidence in trial on drug charges)), *cert. denied*, 474 U.S. 1013, 106 S.Ct. 545, 88 L.Ed.2d 474 (1985).

On either theory, we are convinced that the District Court did not abuse its discretion in admitting the drug paraphernalia into evidence.

## III.

Fuller also argues he was denied effective assistance of counsel because of the government's "attack on his lawyer's integrity" during the prosecution's closing argument. Brief for Appellant at 17. We disagree.

Fuller was represented by counsel from the public defender's office. At the trial, the defense called Thomas Hinton, an investigator for the public defender, to testify to an inconsistent statement made by a police officer. On cross-examination by the government, Hinton testified that he and the attorney handling a case decided after each interview by the investigator whether or not Hinton was to make a written report of the interview. In his closing argument,

**148**

Fuller's counsel referred to the investigator's testimony. In response, the government alluded to some missing interview reports and suggested that the jury draw its own conclusions. Fuller made no objection at the time of the argument, but later requested a mistrial or a jury instruction that there was no evidence of defense counsel's misconduct. The request was denied.

■ Since Fuller failed to object at the time of the argument, we review this matter under the plain error standard. *United States v. Ellsworth,* 738 F.2d 333, 337 (8th Cir.), *cert. denied,* 469 U.S. 1042, 105 S.Ct. 528, 83 L.Ed.2d 415 (1984). Reversal is warranted only if we find that the government's remarks "affected substantial rights resulting in a miscarriage of justice." *Id.*

■ We are less than overwhelmed by Fuller's position on this issue. The government made the comments in question in response to Fuller's closing argument and did not mention Fuller's counsel. The comments referred only to the investigator and his failure to prepare written reports. We have some difficulty in discerning any impropriety in these comments. We certainly do not find the remarks to have been so prejudicial as to have affected Fuller's substantial rights. These comments, and the trial judge's failure to do anything about them, therefore do not amount to plain error.

IV.

Presenting three constitutional challenges to the Sentencing Guidelines, Fuller requests that his sentence be vacated and that he be resentenced. He first argues that the Guidelines violate the separation-of-powers doctrine by giving legislative power to the judicial branch and by impairing the judiciary's neutral function. After Fuller filed his brief in this appeal, the Supreme Court upheld the constitutionality of the Guidelines in response to the same separation-of-powers argument. *Mistretta v. United States,* — U.S. —, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Fuller's argument therefore fails.

Fuller next questions the constitutionality of the Guidelines on due process grounds, raising issues not addressed by the Supreme Court in *Mistretta.* He first contends that the Guidelines violate his right to individual sentencing by restricting his right to present potentially mitigating evidence and by limiting the trial judge's discretion in sentencing. In *United States v. Brittman,* 872 F.2d 827, 828 (8th Cir. 1989), and more recently in *United States v. Barnerd,* 887 F.2d 841, 842 (8th Cir.1989), panels of this Court considered and rejected this due process claim. These cases represent the law of our circuit. Fuller thus cannot prevail on this issue.

Fuller contends further that, because a sentence imposed under the Guidelines may be lengthened by facts that are neither determined by a jury nor proved beyond a reasonable doubt, the Guidelines fail to provide procedural safeguards constitutionally required in criminal trials. This Court in *Barnerd* decided this issue adversely to appellant's position, holding that such constitutional requirements are inapplicable to sentencing procedures. *Id.* at 842.

Fuller's final due process attack on the Guidelines is that they deny criminal defendants the right to confront witnesses who testify to facts relevant to sentencing. As noted by this Court in *Barnerd,* the Guidelines do provide for procedural safeguards, including an evidentiary hearing, when a sentencing factor is in dispute. *Id.* at 842. Since Fuller has not shown that the Guidelines are facially invalid in this regard, and he identifies neither disputed facts nor witnesses he was unable to confront in his own sentencing proceeding, his attack does not succeed.

Fuller's last constitutional challenge to the Guidelines is that they violate Article I of the Constitution. He argues that the Guidelines are legislation that never was presented to the President for his signature, as required by Article I, § 7. In *Barnerd,* a panel of this Court rejected that argument, noting that the statute delegating authority to the Sentencing Commission to promulgate guidelines was

signed by the President, making his signature on the Guidelines unnecessary. *Id.* *Barnerd* is dispositive of Fuller's Article I claim.

## V.

Fuller's final argument is that he was sentenced erroneously under the enhancement provisions that federal law provides for previously convicted felons in possession of a firearm. 18 U.S.C. § 924(e). He argues that his Missouri convictions for burglary second degree do not constitute violent felonies, despite the plain language of the statute. *Id.* § 924(e)(2)(B). As Fuller notes in his brief, this Court has decided this issue adversely to his position. "In our view, the statute says, 'burglary,' and we take that to mean 'burglary,' however a state may choose to define it." *United States v. Portwood*, 857 F.2d 1221, 1223–24 (8th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2073, 104 L.Ed.2d 638 (1989).

Fuller's convictions and sentences are affirmed.