# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1292

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Nickolas James Conrad, | * | |
| | * | |
| Appellant. | * | |
| | * | |

_____

Submitted: August 20, 2002

Filed: February 28, 2003

_____

Before WOLLMAN, RILEY, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Nickolas James Conrad was charged in a one count indictment with possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. A jury convicted him of the charge. Conrad appeals his conviction arguing prosecutorial misconduct in the opening statement and closing argument. In addition, Conrad appeals the court's decision to allow the government to introduce into evidence certain drug paraphernalia found in his apartment. For the reasons stated below, we reverse and remand for a new trial.

This court has directly addressed the impropriety of discussing the purpose of the gun control statute during trial. See United States v. Norton, 639 F.2d 427 (8th Cir. 1981). As stated in Norton: "This court has previously held that testimony concerning the purpose of the Gun Control Act has little or no probative value in a trial for a violation of the Act." Id. at 429 (citing United States v. Bell, 573 F.2d 1040, 1045 (8th Cir. 1978); United States v. Fullmer, 457 F.2d 447, 449 (7th Cir. 1972)). In Norton, the defendant was convicted for possession of a firearm by a felon and for possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871. Id. at 427. During closing arguments, the prosecutor argued about the purpose of the statute and, over the objection of defense counsel, the court allowed the prosecutor to continue. On appeal to this court, we stated:

> This statement was clearly improper. This Court has previously held that testimony concerning the purpose of the Gun Control Act has little or no probative value in a trial for a violation of the Act. There is even less justification for allowing the prosecutor to "testify" in closing argument about the statute's purpose. Moreover, the government admits that the only proper issue for the jury's consideration was whether Norton was in possession of the weapon; indeed, the prosecutor so stated in her closing argument. Even at the time she made the remark about the statute's purpose, therefore, the prosecutor knew that it had absolutely no relevance to the issue at trial. Its sole purpose was to create prejudice in the minds of the jurors, and the trial court erred in permitting it to be made.

Norton, 639 F.2d at 429 (internal citations and footnote omitted). We reach the same conclusion in this appeal.

Conrad rented the upstairs apartment of a two-story duplex. Prior to moving into that apartment, Conrad lived in the downstairs apartment with his friend Dale Johnson. In the months of January, February, and early March of 2001, Johnson, on a sporadic basis, stayed in the upstairs apartment rented by Conrad. Johnson would

2

sleep on a futon owned by Conrad. On the morning of March 7, 2001, the St. Paul Police Department and the Minnesota Gang Strike Force executed a search warrant on Conrad's residence. Johnson and Conrad remained outside the duplex during the search. While outside, an officer asked Conrad and Johnson if there were any weapons inside the house. Conrad responded: "There is a sawed-off shotgun in the bedroom closet upstairs." During the search, the gun was found in the closet. Conrad contends the gun belonged to Johnson.

We first address Conrad's prosecutorial misconduct allegation. The comments at issue in this case were made by the prosecutor in his opening statement, in eliciting testimony from a witness, and in his closing argument. The comments pertained to the purpose of the charging statute. In his opening statement the prosecutor described the expected testimony of an ATF agent and indicated the agent would testify as to why the weapon is regulated. The prosecutor stated:

> Mr. Steinkamp: But you'll also hear from Special Agent David Nygren. He'll talk to you about the firearm that was seized in the execution of the warrant. He'll tell you that it was working, that it fired without a problem, and he'll talk to you a little bit about sawed-off shotguns versus shotguns, why they're illegal –
>
> * * *
>
> Mr. Scott: Objection, your Honor, objection. Improper argument.
>
> The Court: I think anything further as to the rationale behind the law would be inappropriate.

(Trial Transcript Day 1 at 118-19).

When the agent was on the stand, the prosecutor sought to elicit testimony regarding the shot pattern of the illegal weapon:

3

Mr. Steinkamp: And can you explain to the jury how when you fire a shell through a sawed-off shotgun, the pattern of the BBs, if you will, differs from shooting from a regular-length shotgun?

Mr. Scott: I'm going to object, your Honor. One relevance, two, 403.

The Court: Overruled. . . .

\* \* \*

Agent Nygren: [T]he shorter the barrel, the pattern is going to disperse more rapidly from a shorter barrel, because as it exits the barrel it's going to spread out, disperse, and cause a larger pattern than if you had a longer shotgun barrel. Because the longer the barrel, the longer the pattern is going to stay together. . . .

(Trial Transcript Day 1 at 207). In addition, the agent testified about how the weapon could be carried and the potential for concealment. The court allowed the testimony over an objection from defense counsel. However, the court struck the agent's testimony regarding concealment and cautioned the jury to disregard that portion of the agent's testimony.

In closing arguments, the prosecutor again went into the purpose of regulating the weapon at issue after the court instructed him not to:

Mr. Stenkamp: Why? Why regulate a gun like (indicating) this? This is a gun that can be worn on the shoulder, it fires a 12-gauge shotgun round –

Mr. Scott: Your Honor, I'm going to object to the why. It appeals to passion and prejudice.

The Court: Overruled at this point.

Mr. Steinkamp: There's a reason why this gun is regulated and a

4

shotgun isn't. There's a reason why this gun is regulated and a nine-millimeter handgun isn't.

Mr. Scott: I'm going to object again your Honor, from the same grounds.

The Court: I think at this point you're going beyond the permissible bounds of argument. Sustained.

* * *

Mr. Steinkamp: It could put a pattern about this (indicating) big from nine feet away.

(Trial Transcript Day 3, at 8-9, 14).

The trial court has broad discretion in controlling the direction of opening statements and closing arguments, "and this court will not reverse absent a showing of abuse of discretion." United States v. Johnson, 968 F.2d. 768, 769 (8th Cir. 1992). On appeal, we review the facts of each case in order to determine if the prosecutor's remarks unduly prejudiced the defendant's opportunity for a fair trial. Id. at 770. We will reverse the conviction if we conclude the jury's verdict could reasonably have been affected by the prosecutor's improper comments. Id.

This court has established a two-part test for reversible prosecutorial misconduct: (1) the prosecutor's remarks or conduct must have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. See United States v. McGuire, 45 F.3d 1177, 1189 (8th Cir. 1995); United States v. Hernandez, 779 F.2d 456, 458 (8th Cir. 1985). We employ the following three factors to determine the prejudicial effect of prosecutorial misconduct: "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the court." Hernandez, 779 F.2d at 460; see also United States v. Eldridge, 984 F.2d 943, 946-47 (8th Cir. 1993).

5

We reject the government's argument that the statements were nothing more than an attempt to describe the statute, distinguish the weapon, and meet the burden of proof. The comments made in the opening statement and closing argument had little or no probative value on any issue at trial. The comments did not relate to an element of the offense nor did the comments aid the fact finder. Why Congress has chosen to prohibit the possession of a sawed off shotgun is simply not relevant to issues of whether the defendant possessed such a weapon. The prejudicial effect of the prosecutor's comments and the testimony elicited from the ATF Special Agent substantially outweighed its probative value. Therefore, we find the comments made by the prosecutor were improper.

Having determined the comments were improper, we now must decide whether the prosecutor's remarks prejudicially affected the defendant's substantial rights such that the defendant was deprived of a fair trial. Hernandez, 779 F.3d at 460. In making this determination, we first examine the cumulative effect of the alleged misconduct. United States v. Cannon, 88 F.3d 1495, 1502 (8th Cir. 1996). In this case, the prosecutor's comments were not limited to one phase of the trial. The prosecutor commented on the purpose of the statute in his opening statement and closing argument. In addition, during direct examination of ATF Special Agent David Nygren, the prosecutor sought to elicit improper testimony regarding the purpose of the statute, and other information not relevant to the elements of the charge. In examining the cumulative effect of the improper comments, we conclude that the pervasiveness of the improper comments substantially impaired the defendant's right to a fair trial. See Berger v. United States 295 U.S. 78, 89 (1935) ("[W]e have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential.").

6

Next, we examine the strength of the properly admitted evidence of the defendant's guilt. Hernandez, 779 F.3d at 460. Evidence retrieved from Conrad's residence consisted of the firearm, shotgun shells, 9mm ammunition, .40 caliber ammunition, a gun cleaning kit, drug paraphernalia, and the defendant's pants containing his driver's license. In addition, the evidence included statements by Conrad to his landlord about the firearm. The government contends the evidence against the defendant was overwhelming and that the prosecutor's comments could not have prejudiced the defendant or affected the jury verdict. We disagree. While the evidence is strong in this case, the tenor of the prosecution severely prejudiced the defendant. The evidence indicated Conrad was aware the weapon was in the apartment. However, the evidence also indicated that Conrad did not have exclusive control of the apartment. Absent the prejudicial comments, a fair conclusion may have supported Conrad's defense, that is, that despite his knowledge of the gun's presence, he did not have actual or constructive possession of the gun. It is reasonable to conclude that the jury verdict could have been affected by the prosecutor's comments. See Norton, 639 F.2d at 429 ("Our review of the record compels us to conclude that the jury verdict could reasonably have been affected by the improper argument.") (citation omitted).

Finally, we turn to the curative actions taken by the court. Hernandez, 779 F.3d at 460. The government contends that the defendant's objections were twice sustained and that the preliminary instructions given by the court reduced the cumulative effect of any misconduct. The government directs us to several instructions. First, the government cites to the following preliminary instruction, which was reiterated in the court's final instructions: "It's important that you remember throughout this entire trial that the questions, remarks, and the arguments of the lawyers are not evidence in this case." Next, the government points to this preliminary instruction:

7

> If you should not consider the evidence, I will sustain an objection. If an answer is given to which an objection is both made and sustained, I may order that that answer be stricken from the record and direct that you should disregard that answer. If you should consider the evidence, I will overrule the objection.

(Trial Transcript Day 1, at 109). We do not believe the standard preliminary instructions have a significant curative effect on the statements made by the prosecutor. See Norton, 639 F.2d at 429 n.2 ("The government contends that, even if the district court erred in permitting the prosecutor to tell the jury about the purpose of the statute, the error was corrected by the court's charge. While discussing the elements of a violation of the Gun Control Act, the court stated, in passing, 'Now you need not concern yourself as jurors with the reason for this particular statute.' Under the circumstances of this case, this statement was not sufficient to prevent Norton from being prejudiced by the improper argument."). Consequently, the curative actions taken by the court were insufficient to protect the defendant's right to a fair trial.

Because the improper remarks were communicated in both the opening statement and closing argument, as well as during testimony of the ATF agent, we conclude the cumulative effect of the statements substantially impaired Conrad's opportunity for a fair trial. See Berger 295 U.S. at 89. The strength of the properly admitted evidence and the curative actions taken by the court failed to negate the cumulative effect of the improper comments and testimony. The improper comments have prejudicially affected Conrad's substantial rights and worked to deprive him of a fair trial. Accordingly, we reverse the conviction and remand for a new trial.

Because we reverse and remand for a new trial, we must address the evidentiary issues presented in this appeal. See Manning v. Bowersox, 310 F.3d 571, 574 n.3, (8th Cir. 2002) ("Our decision on Manning's right to counsel claim is dispositive, but we still address the precharging delay and pretrial identification

8

claims because these issues are likely to come up again if the government pursues a new trial." (citation omitted)). Conrad argues that the district court erred by admitting evidence of drug paraphernalia found in his apartment. The court allowed the evidence pursuant to Federal Rule of Evidence 404(b) after the defendant testified. We review a district court's ruling on the admission of evidence for an abuse of discretion. United States v. Lemon, 239 F.3d 968, 971 (8th Cir. 2001). We reverse "when it is clear that the evidence has no bearing on the case," United States v. Williams, 895 F.2d 1202, 1205 (8th Cir. 1990) (citations omitted), and "was introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Brown, 148 F.3d 1003, 1009 (8th Cir. 1998) (citation omitted).

The government sought to introduce evidence of the defendant's drug use during its case in chief on the theory of a close connection between drugs and firearms. See United States v. Fuller, 887 F.2d 144, 147 (8th Cir. 1989). Specifically, the government attempted to introduce items found in Conrad's apartment, including an anti-freeze bottle containing syringes, a bong, and a shooter pipe. The government asserts the items were all in plain view and presented testimony to support the claim. The district court reserved judgment on the government's motion, but cautioned:

> [I]f there is additional evidence introduced of multiple occupants, dwellers, evidence of who else may have been in that apartment and what other evidence might tie to other individuals in the apartment, at that point the probative value of the defendant's background and items that appear to be his, that is, in terms of narcotic evidence may well be admissible. (Trial Transcript, Day 1, at 232.)

Conrad took the stand himself and testified that he did not have exclusive control over the residence and that the gun did not belong to him. Another witness, Gigi Romig, also testified and supported Conrad's claim that he did not have exclusive control over the residence. The district court then allowed the evidence of drug use to come in. Conrad contends the evidence prejudiced his right to a fair trial.

9

Federal Rule of Evidence 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." For Rule 404(b) evidence to be admissible, "the evidence must be '(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged.'" United States v. Shoffner, 71 F.3d 1429, 1432 (8th Cir. 1995) (quoting United States v. Jones, 990 F.2d 1047, 1050 (8th Cir. 1993)). The district court admitted the evidence of drug paraphernalia when Conrad testified that Dale Johnson was also in control and possession of the upstairs apartment.

We have serious reservations about whether the possession of drug paraphernalia without evidence of drug trafficking is admissible to show possession of an illegal weapon. However, in United States v. Fuller, 887 F.2d 144 (8th Cir. 1989), a panel of this court relying on Eighth Circuit precedent admitted evidence of drug paraphernalia in the prosecution of a federal firearms violation. Id. at 147 (citing United States v. Simon, 767 F.2d 524, 527 (8th Cir. 1985)). In Fuller, this court concluded that in addition to the drug paraphernalia being properly admitted to impeach a defense witness, it was also admissible under Rule 404(b) as probative on the issue of motive to possess a firearm. Id. Typically, the cases in which this type of evidence is admitted are drug trafficking cases and the evidence is admitted to show the "close and well-known connection between firearms and drugs." Id.; see also United States v. Claxton, 276 F.3d 420, 423 (8th Cir. 2002) (same). While the evidence supporting the 'well-known' connection between drug trafficking and possession of a gun is absent in this case, we do not find the district court abused its discretion in admitting the evidence of drug paraphernalia. The district court admitted the evidence to prove possession and control of the apartment, and in doing so did not abuse its discretion. See United States v. Richards, 967 F.2d 1189, 1192-

10

93 (8th Cir. 1992) (drug paraphernalia admitted when the prosecution introduced the evidence to link the defendant to other items found in the defendant's trunk and to raise the inference that the defendant knew the guns were in the trunk).

The conviction is reversed and the case is remanded for a new trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.