MELLOY, Circuit Judge, concurring in part and dissenting in part.
I concur in the majority’s opinion except the portion concerning prosecutorial misconduct, Part II, ante at 388-91. Because I would hold that the government’s misconduct in the rebuttal portion of closing argument resulted in cumulative prejudice to Lamarvin Darden’s right to a fair trial, and because that misconduct impugned the fairness, integrity, and public reputation of judicial proceedings, I dissent.
For this court to reverse under plain error review, an appellant must show an “ ‘(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.’ ” United States v. Pirani, 406 F.3d 543, 550 (8th Cir.2005) (en banc) (quoting Johnson v. United States, 520 U.S. 461, 466-67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). A *392 showing that the error affected the defendant’s substantial rights “requires a showing that the error was prejudicial and affected the trial’s outcome. Factors to consider in assessing prejudice include the cumulative effect of any misconduct, the strength of the properly admitted evidence, and any curative actions taken by the trial court.” United States v. Foreman, 588 F.3d 1159, 1164 (8th Cir.2009) (internal citations and quotation marks omitted). “Generally speaking, reversal is only warranted where the verdict could reasonably have been affected by the alleged misconduct.” United States v. Miller, 621 F.3d 723, 730 (8th Cir.2010).
I.
The majority concludes that the prosecuting Assistant United States Attorney (AUSA) made improper remarks in rebuttal when implying that, to acquit Darden, the jury had to believe the police officers lied. I fully agree with this conclusion, as the AUSA’s argument distorted the government’s burden of proof. See United States v. Reed, 724 F.2d 677, 681 (8th Cir.1984). I agree as well with the majority’s condemnation of the AUSA’s statement that, if the officers were indeed lying, then “[tjhey risked their careers, they risked their families, they risked their lives to put this man in prison when he didn’t do anything? Does that make any sense at all?” These remarks were improper. See Close v. United States, 679 F.3d 714 (8th Cir.2012) (In Miller, “we extended this burden-of-proof principle and held that ‘the government made an improper argument when it stated that an acquittal required the jury to find that Officer Smith would jeopardize his future career as a police officer.’ ” (quoting Miller, 621 F.3d at 732)).
The AUSA also made improper comments in rebuttal when telling the jury that an acquittal would jeopardize the rule of law and place “honest residents” at risk. A federal prosecutor may not tell the jury that it must choose between a guilty verdict and the safety of “honest residents.” The prosecutor’s protect-the-community argument was entirely unrelated to the jury’s task in a criminal trial, which is to determine whether the government has proved its case beyond a reasonable doubt. See Washington v. United States, 327 F.2d 793, 795 (5th Cir.1964) (“Fair comment upon the evidence did not justify the prosecutor’s statement that the people of the district had ‘a right to be secure in their homes.’ ”). “In the trial of cases to a jury in the federal courts, the arguments of counsel must be confined to the issues of the case, the applicable law, the pertinent evidence, and such legitimate inferences as may properly be drawn therefrom.” London Guarantee & Accident Co. v. Woelfle, 83 F.2d 325, 342 (8th Cir.1936). In this case, the AUSA departed from such arguments and instead appealed to the jury’s emotions. “[P]rosecutors may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence.” United States v. Nobari, 574 F.3d 1065, 1076 (9th Cir.2009) (internal citation and quotation marks omitted). Violence in any community is clearly a great social concern, but “the pressing nature of the problem does not give prosecutors license to encumber certain defendants with responsibility for the larger societal problem in addition to their own misdeeds.... [T]he prosecutor in this case appealed to the jurors to be the conscience of the community in an improper and inflammatory manner.” United States v. Johnson, 968 F.2d 768, 771 (8th Cir. 1992).
*393 It is particularly noteworthy that, when concluding, the AUSA highlighted the risks police officers face and then asked the jury to convict Darden as a token of appreciation to law enforcement: to do otherwise “would be telling [law enforcement] that no one appreciates them and no one appreciates the job they are doing. And I don’t think that’s what you want to do.” This comment alone, in my view, supports the granting of a new trial. There is simply no dichotomy between an acquittal and a respect for law enforcement, and it was error to state otherwise. That the members of the jury may or may not “appreciate the job [law enforcement] is doing” has nothing to do with whether the evidence supports a conviction. See Union Elec. Light & Power Co. v. Snyder Estate Co., 65 F.2d 297, 301 (8th Cir.1933) (“[Arguments of counsel should be confined to the law and pertinent evidence, with such inferences as may properly be drawn therefrom.”). Instead, the argument seeks to capitalize on a bias in favor of law enforcement that the AUSA sought to elicit through reference to the risks police officers face. By encouraging a bias in the jury and then requesting a conviction based on that bias, the AUSA clearly overstepped the bounds of propriety.
In addition to improperly shifting the burden of proof, making a protect-the-community argument, and encouraging a bias-based conviction, the AUSA again went out of bounds by leveling personal attacks on the integrity and competence of defense counsel before the jury. Following the conclusion of defense counsel’s closing arguments, the AUSA began her rebuttal by stating to the jury: “[defense counsel] has freely used the expressions manipulation, stretching the truth, lying, and I would dare to say that’s what you just heard. Let’s go through some of the things he just said to you that were not based on the evidence.” In addition, the AUSA asked the jury: “What makes [defense counsel] an expert on how the police are supposed to conduct their business? He’s not.” These statements were improper because they “ ‘encourage[d] the jury to focus on the conduct and role’ of the defense team rather than the evidence, and because the inflammatory nature of the statements was designed to anger the jury through general denigration of the defense.” United States v. Rodriguez, 581 F.3d 775, 818-19 (8th Cir.2009) (Melloy, J„ concurring in part and dissenting in part) (quoting United States v. Holmes, 413 F.3d 770, 775 (8th Cir.2005)); see also Cline v. United States, 395 F.2d 138, 141 (8th Cir.1968) (finding it improper for a prosecutor to accuse defense counsel of dishonesty). These arguments, just as much as the arguments the majority found to be improper, were “undignified and intemperate, containing improper insinuations and assertions calculated to mislead the jury.” Berger v. United States, 295 U.S. 78, 85, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). A prosecutor’s attack on defense counsel distracts the jury from the task before it. Moreover, it “carries with it the imprimatur of the Government and [therefore] may induce the jury to trust the Government’s judgment rather than its own view of the evidence.” United States v. Young, 470 U.S. 1, 18-19, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). Accordingly, when “the prosecutor makes inappropriate statements there is a multiple effect which tends to tip the scales in favor of the government.” Hall v. United States, 419 F.2d 582, 588 (5th Cir.1969).
Improper burden shifting, appeals to the jury’s emotions, encouraging a bias-based conviction, and personal attacks on defense counsel are “offensive to the dignity and good order with which all proceedings in court should be conducted.” Viereck v. United States, 318 U.S. 236, 248, 63 *394 S.Ct. 561, 87 L.Ed. 734 (1943). Such conduct is incompatible with the prosecutor’s important role in our judicial system, as prosecutors are “representative^] not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.” Berger, 295 U.S. at 88, 55 S.Ct. 629; see also United, States v. O’Connell, 841 F.2d 1408, 1428 (8th Cir.1988) (“Comments of this nature have no place in a criminal trial; the prosecutor’s special duty as a government agent is not to convict, but to secure justice.”); Isaacs v. United States, 301 F.2d 706, 736 (8th Cir. 1962) (“[I]n a criminal case, the United States Attorney has imposed upon him a high and important responsibility.”). Therefore, for the reasons the majority identifies, as well as for those described in my comments above, I agree that the AUSA clearly made improper rebuttal remarks.
II.
I would hold that the cumulative effect of the AUSA’s improper remarks prejudiced Darden’s substantial rights. The evidence against Darden was not strong enough to overcome the prejudice caused by those remarks. Further, to the extent that there was any “invited” rebuttal, the prosecutor is not allowed to use improper comments to rebut the defense arguments.
Prosecutorial misconduct affects a defendant’s substantial rights if it was prejudicial and affected the trial’s outcome. United States v. McClellon, 578 F.3d 846, 859-860 (8th Cir.2009). “Factors to consider in assessing prejudice include the cumulative effect of any misconduct, the strength of the properly admitted evidence, and any curative actions taken by the trial court.” Foreman, 588 F.3d at 1164 (internal citation and quotation marks omitted). When considering the effect on the jury of the improper statements, this court considers the cumulative impact of the government’s statements in the context of the trial as a whole. See Holmes, 413 F.3d at 774-75 (remanding for a new trial based on cumulative error); Isaacs, 301 F.2d at 737 (“Thus, we are required to determine whether in light of all the facts and circumstances, with particular emphasis on all of the arguments, the utterances complained of so influenced the jury as to bring about an unjust conviction.”).
Taken separately, the improper remarks are problematic for the reasons outlined above. Their full effect on Darden’s substantial rights, however, comes into sharper focus when their cumulative impact is considered. “[W]e have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential.” Berger, 295 U.S. at 89, 55 S.Ct. 629.[4] The AUSA’s misconduct in closing argument was persistent and varied. Before the jury, the AUSA: created a false dichotomy between an acquittal and a criminal conspiracy by the police, made a protect-the-community argument, leveled personal attacks against defense counsel’s integrity and competence, and sought to inflame the jury and then benefit from that bias. The sheer volume of improper statements strongly suggests the presence of cumulative prejudice. Further, defense *395 counsel had no opportunity to respond to these statements, as the AUSA made these patently improper remarks during the rebuttal portion of closing arguments. See Miller, 621 F.3d at 732 (“[T]he cumulative effect was high because of the timing of the comments.”); Holmes, 413 F.3d at 776.
I would hold that the cumulative effect of the improper statements was significant enough to affect Darden’s substantial rights. By impugning defense counsel’s competence and integrity, the AUSA laid claim to superior legal acumen — thereby magnifying the jury’s tendency to trust the government. Because of this, when the AUSA made other improper statements, the jury was apt to rely on those statements not only because they carried the imprimatur of the government but also because the prosecutor’s attacks on defense counsel “suggested] broader knowledge, experience and expertise by the government in such matters.” Rodriguez, 581 F.3d at 819 (Melloy, J., concurring in part and dissenting in part). The Supreme Court long ago presumed that juries have “confidence that [the prosecutor’s obligations] will be faithfully observed,” yet as made clear in this case, because of that confidence, the prosecutor’s “improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.” Berger, 295 U.S. at 88, 55 S.Ct. 629.
Further, I do not believe the “invited response” doctrine justifies the comments. It is true that defense counsel took hard shots at the investigating officers, essentially accusing them of being lazy and conducting a sloppy investigation. While defense counsel focused his arguments about lying on the confidential informant — himself a convicted felon — and did not explicitly accuse the officers of fabricating testimony, I concede he came very close to that line. The prosecutor justifiably wanted to come to the defense of the testifying officers. However, that does not give license to engage in personal attacks on defense counsel, and neither did it license the prosecutor’s appeal to jury bias. If defense counsel opened the door at all, that door was only opened to arguments that right the scales: it did not open the door to improper argument limited only by the prosecutor’s imagination. See Chicago & N.W. Ry. Co. v. Kelly, 84 F.2d 569, 574 (8th Cir.1936) (“While improper argument by one counsel may elicit a response by his opponent which is also improper, without requiring a reversal, it does not open up the entire field to improper argument.”). Accordingly, I disagree with the majority’s suggestion that all of the prosecutor’s improper statements were invited. See United States v. Flynn, 196 F.3d 927, 930 (8th Cir.1999) (“When, as here, the prosecutor’s allegedly improper comments are in response to the defendant’s attack, we are called upon to determine whether the prosecutor’s comments were a fair response.”).
The prosecutor’s personal attacks on defense counsel, plea for the jury to act as a general bulwark for law and order, appeals to emotion over reason, and inflammation of jury bias were all improper and cannot be wholly excused by the “invited response” doctrine. Here, “use of the doctrine ... minimizes] the gravity of virtually unchecked prosecutorial appeals going far beyond a ‘fair’ response to the defense counsel’s arguments.” Young, 470 U.S. at 29, 105 S.Ct. 1038 (Brennan, J., dissenting); see also id. (“Rather than apply the doctrine as a limited corrective, courts frequently employ it as a rule of unclean hands that altogether prevents a defendant from successfully challenging prosecutorial improprieties.”). Although the AUSA, “as an advocate, is entitled to make a fair response to the arguments of de *396 fense counsel, in [this] case, the [AUSA’s] response was not fair.” United States v. Lee, 743 F.2d 1240, 1255 (8th Cir.1984).
Turning to the next factor — the strength of the properly admitted evidence — I believe that the government’s case against Darden was not strong enough to overcome the cumulative effect of the misconduct. While a challenge to the sufficiency of the evidence would likely fail in this case, such a challenge is not before this court. Instead, the question is whether, in light of the strength of the evidence, there is a “ ‘reasonable probability that the outcome would have been different absent the alleged error.’ ” United States v. Herbst, 668 F.3d 580, 587 (8th Cir.2012) (quoting United States v. Littrell, 439 F.3d 875, 883 (8th Cir.2006)). In making that assessment, the court must weigh the cumulative effect of the misconduct against the relative strength of the evidence. Miller, 621 F.3d at 732. “ ‘If the evidence of guilt is overwhelming, an improper argument is less likely to affect the jury verdict. On the contrary, if the evidence of guilt is weak or tenuous, the existence of prejudice is more easily assumed.’ ” Johnson, 968 F.2d at 772 (quoting United States v. Splain, 545 F.2d 1131, 1135 (8th Cir.1976)).
As the majority opinion makes clear, the possession case against Darden turned almost entirely on officer testimony, much of which was hearsay. The remainder of the evidence — a prior incident in which Darden placed a gun under a mattress, and testimony from a confidential informant that Darden possessed a 9mm weapon— was circumstantial and turned on the jury’s credibility determination, respectively. Thus, the evidence of Darden’s guilt was neither overwhelming nor very strong.[5] Indeed, this case “may properly be characterized as weak — depending, as it did, upon the testimony of [a convicted felon]. In these circumstances, prejudice to the cause of the accused is so highly probable that we are not justified in assuming its nonexistence.” Berger, 295 U.S. at 89, 55 S.Ct. 629.
But for defense counsel’s failure to preserve the error, this case would fall squarely within the constellation of cases in which this court has reversed a conviction for prosecutorial misconduct. In United States v. Norton, 639 F.2d 427 (8th Cir.1981), we reversed a conviction because “[m]uch of the testimony indicating that Norton possessed the gun was equivocal, and a defense witness rebutted, at least in part, the testimony that Norton had said he had a shotgun in the bedroom.” Id. at 429. In this case, Darden and his grandparents controverted the statements attributed to them by law enforcement at trial. In United States v. Conrad, 320 F.3d 851 (8th Cir.2003), this court overturned a conviction for prosecutorial misconduct because the evidence linking the defendant to a firearm found in the defendant’s shared residence was equivocal. Id. at 856. Here, it is clear that Darden did not enjoy exclusive dominion over the house or over the room in which the firearm was found. Finally, in *397 Miller, 621 F.3d at 732, this court reversed a conviction based on prosecutorial misconduct because the possession case against the defendant hinged primarily upon testimony of law enforcement — testimony that the type of prosecutorial misconduct at issue in this case rendered particularly difficult for the jury to competently evaluate. Id. (“[T]he evidence showing [that the defendant] possessed a gun may be sufficient, but it is not overwhelming.”). It was the jury’s role to evaluate this officer testimony and to determine whether and how much to credit it, but the prosecutor compromised that role by employing tactics “designed to elicit emotional rather than deliberative consideration” in the jury. Rodriguez, 581 F.3d at 819 (Melloy, J., concurring in part and dissenting in part).
While the evidence in this case is similar to that found in Conrad, Miller, and Norton, the level of prosecutorial misconduct in this case far outstrips the misconduct in those cases. In Conrad and Norton, the sole instance of misconduct was the prosecutor’s description to the jury of the purpose behind the Gun Control Act. Conrad, 320 F.3d at 855; Norton, 639 F.2d at 428-29. In Miller, the government “insinuated that to find Miller innocent, the jury must believe that Officer Smith is” lying and that, to acquit, the jury must find “that Officer Smith would jeopardize his future career as a police officer.” Miller, 621 F.3d at 730-732. The prosecutorial misconduct in those cases pales in comparison to the AUSA’s actions in this case, which I have recounted at length above. Thus, even if “the evidence is strong in this case, the tenor of the prosecution severely prejudiced the defendant.” Conrad, 320 F.3d at 856.
Finally, I do not view the jury’s partial acquittal of Darden as somehow demonstrating that the prosecutor’s misconduct did not prejudice Darden. Rather, “[t]he jury’s decision can just as naturally be interpreted to suggest that the evidence was close and the verdict a compromise, thus supporting a belief that the prosecutor’s [misconduct] ... did in fact have a prejudicial impact.” Young, 470 U.S. at 32, 105 S.Ct. 1038 (Brennan, J., dissenting).
Balancing, as we must, the strength of the evidence against the cumulative effect of the prosecutorial misconduct, I am compelled to find prejudice sufficient to establish “ ‘a reasonable probability that the outcome would have been different absent the alleged error.’ ” Herbst, 668 F.3d at 587 (quoting Littrell, 439 F.3d at 883); see also Berger, 295 U.S. at 89, 55 S.Ct. 629 (“In these circumstances prejudice to the cause of the accused is so highly probable that we are not justified in assuming its nonexistence.”). Accordingly, the comments affected Darden’s substantial rights, and I now consider whether “the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.” Pirani, 406 F.3d at 550 (quoting Johnson v. United States, 520 U.S. 461, 466-67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)); see also Rush v. Smith, 56 F.3d 918, 924 (8th Cir.1995) (Hansen, J., concurring specially) (“I ... would exercise our remedial discretion to reverse for a new trial because the error in this case strikes at the heart of the integrity or public reputation of judicial proceedings.” (internal citation and quotation marks omitted)).
III.
I would hold that the error in this case satisfies the fourth criterion for reversal under plain error review, in that it seriously affected the fairness, integrity, and public reputation of judicial proceedings, and I would accordingly reverse and remand for a new trial. See Pirani, 406 F.3d at 550. *398 This fourth and final factor in the plain error analysis articulated in United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), comes from United States v. Atkinson, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936), in which the Supreme Court wrote: “In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings.” Id. at 160, 56 S.Ct. 391. For support, the Atkinson Court cited two prior cases, both of which reaffirmed a federal appellate court’s authority to reverse following prejudicial statements made to the jury. See Atkinson, 297 U.S. at 160, 56 S.Ct. 391 (citing Brasfield v. United States, 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345 (1926) (reversing criminal conviction following judge’s inquiry as to the numerical division of the jury while the jury was deadlocked) and N.Y. Cent. R.R. Co. v. Johnson, 279 U.S. 310, 318, 49 S.Ct. 300, 73 L.Ed. 706 (1929) (reversing jury verdict based on respondent’s “bitter and passionate attack on petitioner’s conduct of the case” before the jury)). These cases demonstrate that, when engaging in plain error review, appellate courts should be especially mindful and protective of the jury’s unique role in order that “the confidence of the public in [the administration of the law] be maintained.” Clyatt v. United States, 197 U.S. 207, 222, 25 S.Ct. 429, 49 L.Ed. 726 (1905); see also Brasfield, 272 U.S. at 450, 47 S.Ct. 135 (plain error review is particularly appropriate “where the error ... affects the proper relations of the court to the jury.”); United States v. Williams, 399 F.3d 450, 455 (2d Cir.2005) (“The salient characteristic of [the cases underpinning the fourth Olano factor] is that the issue was whether to correct an unpreserved error that occurred in the conduct of a jury trial.”). Here, the AUSA’s persistent misconduct was a sustained assault on the jury’s ability to fulfill that role, thus directly implicating the core concerns animating the fourth Olano factor. See Young, 470 U.S. at 33 n. 16, 105 S.Ct. 1038 (Brennan, J., dissenting) (“[A] pattern and practice of intentional prosecutorial misconduct that has not been deterred through other remedies, may well so seriously undermine the integrity of judicial proceedings as to support reversal under the plain-error doctrine.”); United States v. Vaughn, 443 F.2d 92, 95 (2d Cir.1971) (“As Professor Wright has stated, ‘It is not a miscarriage of justice to convict a guilty man, but if he is convicted in a way inconsistent with the fairness and integrity of judicial proceedings, then the courts should invoke the plain error rule in order to protect their own public reputation.’ ”) (quoting 3 Wright, Federal Practice and Procedure, Criminal § 856 (1969)). The AUSA’s actions, while bringing both “[the prosecutor’s] office and the courts into distrust,” People v. Lee Chuck, 78 Cal. 317, 329, 20 P. 719 (1889), deprived Darden of his “right to a verdict[ ] uninfluenced by the appeals of counsel to passion or prejudice.” N.Y. Cent. R.R. Co., 279 U.S. at 318, 49 S.Ct. 300. I dissent from the majority’s holding that the prosecutor’s improper statements in this case do not warrant a new trial.

. I note, however, that even "a single misstep on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated.” Johnson, 968 F.2d at 771-772 (internal quotation marks and citation omitted).

. This court regularly describes the proof needed to overcome misconduct as either "overwhelming” or "very strong.” United States v. Singer, 660 F.2d 1295, 1305 (8th Cir.1981) (“We ... affirm only because of the very strong case against the defendant and the prompt cautionary actions taken by the district judge.”); see also Johnson, 968 F.2d at 772 (“In the present case, the evidence of Johnson's guilt is far from overwhelming.”); United States v. King, 616 F.2d 1034, 1041 (8th Cir.1980) ("The overwhelming evidence of guilt in this case convinces us that the prosecutor’s comment could not have prejudiced King or affected the jury verdict.”); Splain, 545 F.2d at 1135-1136 ("The overwhelming evidence of guilt in this case convinces us that the prosecutor’s comment could not have prejudiced Splain or affected the jury verdict.”).