# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1187

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Frederick Miller, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 18, 2010
Filed: September 9, 2010

_____

Before SMITH and HANSEN, Circuit Judges, and WEBBER,[1] District Judge.

_____

SMITH, Circuit Judge.

A jury found Frederick Miller guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and the district court sentenced him to 57 months' imprisonment. On appeal, Miller argues that (1) the district court abused its discretion by allowing prosecutorial misconduct during closing argument; (2) the district court erred in allowing the government to misrepresent testimony about the sound an object made upon landing after Miller threw it; (3) the district court abused its discretion when it sustained the government's objection to a particular line

---

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

of cross examination on the issue of bias; and (4) the government presented insufficient evidence for the jury to find him guilty. For the reasons stated below, we reverse.

## I. *Background*

On August 30, 2008, Kansas City, Missouri police officers patrolled the area around East 9th Street and Hardesty Avenue, a high-crime area, at approximately 1:30 a.m. Officers Matthew Smith and Zachary True observed Miller and Tamango Simmons inside a parked vehicle in an apartment complex parking lot. As Officers Smith and True pulled their marked patrol vehicle into the lot, Simmons, the driver, put the car in drive and tried to leave the parking lot. Metal poles blocked the attempted escape.

Miller then jumped out of the car and started running southbound. Officer Smith pursued Miller on foot while Officer True stayed at the car to secure Simmons. When Officer Smith was approximately 20 feet away from Miller, he observed Miller reach into the front of his waistband with his right hand on the right side and, according to Officer Smith's testimony, "pull[ed] out what appear[ed] to be a gun." Miller continued running and turned around to see if Officer Smith was still pursuing him and then threw the item behind his back[2] to the east. When the item that Miller threw hit the ground, Officer Smith thought it was "either narcotics or any type of weapon at that point" because "it sounded like a piece of metal hitting the ground." Officer Smith did not yell out "gun" when he saw Miller throw the item. Officer Smith eventually apprehended Miller by shooting him in the back with a taser.

---

[2]During oral argument, the parties disagreed as to whether Miller threw the item "behind his back" or "over his shoulder." At trial, Officer Smith testified that "[Miller] turns around and looks and sees I'm still in pursuit of him, and he throws the item *behind his back* to the east of us . . . ." (Emphasis added.)

Officers Shawn Davis and James Garcia arrived on the scene. Officer Smith told Officer Davis that he saw Miller throw a gun over into the empty, fenced parking lot to the east of the parking lot where Miller and Simmons had parked their car. The distance from the sidewalk along the apartment building where Officer Smith chased Miller to the chainlink fence enclosing the empty parking lot is approximately 30 to 35 feet. The fence is approximately eight feet high. Officers Davis and Garcia searched the adjacent parking lot and recovered an Arma Galesi Brescia-Brevetto, 7.65 mm semi-automatic pistol and magazine. Officer Garcia recovered the firearm in a grassy area approximately 15 feet to the east of the fence, approximately 40 to 45 feet from the spot that Officer Smith saw Miller throw the object.

Officer Garcia wore gloves when he recovered the gun, unloaded it, and removed the loaded magazine. The metal gun appeared rusty and was heavy. Officer Smith wrote the report of the incident and described Miller throwing an "item." Regarding that report, Smith testified, "I have to write it like how I saw it" and "at the time I didn't know it was a gun."

Officer True logged the weapon into evidence and also wrote the property report. Officer True indicated that the gun should be checked for fingerprints and trace DNA. However, the police lab technician test-fired the gun without conducting fingerprint or DNA testing on the firearm. The lab technician did not wear gloves while handling the gun.

A. *Miller's Testimony*

Miller testified that he was on parole for drug possession and for passing a bad check when this incident occurred. Miller stated that he arrived at the apartment complex with Simmons to meet up with two girls. While waiting, Miller paid $20 for a quarter-gram of cocaine from a person in the area. Miller and Simmons decided to leave and abandoned their planned rendevous.

Miller testified that before police arrived he had placed the cocaine in a metal smoking pipe that he was carrying in his pocket. Miller stated that when police arrived he jumped out of the vehicle, threw the metal pipe, and took off running because he was afraid to be caught with narcotics given his parole status. Miller also testified that he "dropped" a bag of marijuana when he began running from Officer Smith. Miller told police officers that neither his fingerprints nor his DNA would be on the recovered gun because he had never possessed or handled any gun. Police did not find a metal smoking pipe, marijuana, or any narcotics in the area.

Stephanie Beine, a senior forensic scientist with Genetic Technologies, conducted DNA testing on the firearm. Although Beine found DNA from at least four individuals at various locations on the firearm, none matched Miller. Beine concluded that it was "probable" that Miller's DNA would have been on the gun if he had carried, handled, and thrown it. Andrew Atkinson, the government expert, agreed that none of Miller's DNA was found on the firearm. Atkinson stated it was "possible" for a person to handle a gun even though subsequent testing may not reveal that person's DNA.

## B. *Cross Examination*

At trial, Miller's attorney attempted to show bias on the part of the police officers by suggesting that they were inclined to side with the prosecution. Miller's attorney asked Officer Smith if he had talked to and discussed the case with the government, to which he answered, "Yes, I have." Defense counsel then asked, "And in contrast, you haven't been willing to speak with my investigator, Ms. Julie Eilers?" Officer Smith answered, "No. I have not had a chance to speak with her." Defense counsel then asked, "So, Officer, is it fair to say that your interest here is aligned with that of the government?"

The district court sustained the government objection, telling defense counsel to "develop that a little bit further maybe." Defense counsel then asked, "You've

cooperated with the government in terms of giving them all the information they need to know about this case, is that right?" Officer Smith answered in the affirmative. Defense counsel then asked, "And you failed to provide us any information that we've requested about the case, right?" The government objected, but the district court allowed the question because it was "more of a fact—that's a fact question."

During Officer Davis's cross examination, defense counsel began asking similar questions about the officer discussing his testimony with the government while not speaking with defense counsel or his investigator. The only question that the government objected to was the following: "All right. Is it fair to say, based on your cooperation, and lack of cooperation, that your interest is to help the government in this case?" In sustaining the government's objection to this question, the district court specifically stated, "Sustained. That—that question will be sustained each time he object[s] to it. Please don't ask that question."

During Officer True's cross examination, defense counsel then made a record of a "continuing objection" to the district court's sustaining of objections to this line of questioning. Defense counsel stated that the objectionable question went to "just bias and motive" and asked the district court to reconsider its ruling. The court declined to reconsider its ruling but told defense counsel he could ask "factual questions."

### C. *Prosecutorial Misconduct*
#### 1. *"Thunk"*

During trial, at no time did Officer Smith, or any other witness, describe the sound of the object that Miller threw hitting the ground as a "thunk." The only description Officer Smith provided was that "it sounded like a piece of metal hitting the ground." Yet, during its opening statement, the government characterized the sound with the word "thunk," once stating: "Officer Smith heard a distinctive thunk, that he believed based on his training and experience sounded like a firearm hitting

the ground." During closing argument, the government made the following references to the word "thunk," to which defense did not object:

> As he's running, he hears the thunk. He hears the thunk of that item. And you're going to be able to hold that item and feel how heavy that item is. He hears the thunk of that item on the concrete on the parking lot, just to the east as they're running.

During rebuttal argument, the government stated, "And when he heard the thunk, he thought it was a gun." During defense counsel's closing argument, he made the following references to the word "thunk" while attempting to attack Officer Smith's credibility:

> Officer Smith on the stand said he heard metal hit concrete. He said that—that made a thunk. And that, well, to me—to him, that sounded like a gun. But he also conceded that he couldn't really say until after Garcia brought it back, that he thought it was a gun. So it's kind of a situation where, Okay, he throws something. I heard a thunk. And then someone finds a gun. Okay. That must have been what it was.

> Officer Smith says Mr. Miller ran through the first two posts, and he heard the sound of metal hitting the gun—or concrete. He also says it occurred about ten feet to the east. Do you remember that? About—that's where he heard the thunk, about ten feet to the east. Of course, that's nowhere even near the fence from where he threw the gun. So again, that's back to the physical evidence. But that's testimony that he gave.

> And I submit to you the sound of a hollow piece of metal hitting either asphalt or that concrete building there, Scandalo's, I mean, it could make a thunk. It's very possible that is exactly what Officer Smith heard.

### 2. *Closing Arguments*

During cross examination, the government asked Miller if he thought that the police officers were lying during their testimony. Defense counsel objected on the

grounds that the question distorted the government's burden of proof by implying that the jury had to conclude that police were lying to acquit Miller. The government agreed to rephrase. The government, however, later renewed this line of argument in its closing rebuttal argument.

In defense counsel's closing argument, he initially told the jurors that they can believe both Miller's and Officer Smith's testimony. He argued that based on Officer Smith's actions, Officer Smith could have been mistaken about seeing Miller with the gun. Defense counsel stated:

> Let's move on to the testimony in the case. There is really one and only witness—only one witness that suggests that Mr. Miller did have a gun. And I submit to you, as I stated earlier, his testimony is not inconsistent with what Mr. Miller says. This is not a, ["]Oh, do we believe the police or do we believe Mr. Miller?["] It's not a he said/he said credibility contest. You can believe both of those people. To find him not guilty doesn't—you don't have to find that Officer Smith was lying. His testimony is perfectly consistent with what we say happened in this case.

In its rebuttal argument, the government responded to this line of argument, stating:

> Officer Smith is, in some respects, the best witness that you have to be thinking about here. You saw him. He's got 28 years left to go before he retires from [the Kansas City Police Department].
>
> Is he mistaken that he heard a crack pipe as opposed to this gun right here? Is he really mistaken? *Is he going to try and fudge a little bit and risk a career over the defendant, over something like this?* No. Come on, ladies and gentlemen.
>
> Just—it doesn't make any sense. That does—that doesn't make any sense, ladies and gentlemen. That doesn't make any sense at all. *If you acquit the defendant here, if you acquit the defendant, you have to think that*

*Officer Smith made a huge mistake, and you have to wonder what his motivation was for making that mistake.*

(Emphasis added.)

The district court overruled defense counsel's objection to these comments.

The court denied Miller's motions for judgment of acquittal at the close of the government case, the defense case, and the government rebuttal. Miller subsequently moved for judgment of acquittal and a new trial based on, inter alia, prosecutorial misconduct. The court also denied this motion. The jury found Miller guilty, and the district court sentenced Miller to 57 months' imprisonment.

## II. *Discussion*

On appeal, Miller argues that (1) the district court abused its discretion by allowing the government to suggest during closing argument that the jury would have to believe that Officer Smith was insincere in order to acquit Miller; (2) the district court erred in allowing the government to misrepresent testimony about the sound the object made upon landing after Miller threw it; (3) the district court abused its discretion when it sustained the government's objection to a particular line of cross examination which attempted to impeach the police officers involved in the arrest; and (4) the government presented insufficient evidence for the jury to find him guilty.

## A. *Prosecutorial Misconduct*

We begin where the trial ended—closing arguments. Miller argues that the district court erred in its handling of the closing argument. Miller contends that the government impermissibly shifted the burden of proof to him when it stated, "[i]f you acquit the defendant here, if you acquit the defendant, you have to think that Officer Smith made a huge mistake, and you have to wonder what his motivation was for making that mistake." Miller asserts that the government's assorted comments related

to Officer Smith's truthfulness, or lack thereof, and that it is improper to tell the jurors that their finding of guilt or innocence turns on whether they believe the officer's testimony.

The government responds that it merely asked the jurors to apply their common sense and collective wisdom and examine whether the officer made a "mistake" and would risk his career by testifying inaccurately. The government asserts that its rebuttal argument did not shift the burden of proof nor was it improper argument, and therefore, the district court did not abuse its discretion in overruling Miller's objection and allowing the jury to hear and consider the government's statements.

A trial court is "vested with broad discretion in controlling closing arguments and we will reverse only on a showing of abuse of discretion." *United States v. Eldridge*, 984 F.2d 943, 946 (8th Cir. 1993).

> When a defendant argues that the prosecution made improper remarks during closing arguments, the allegedly improper statements will be examined within the context of the entire trial to determine first whether the remarks were in fact improper, and second whether the remarks were so offensive so as to deprive the defendant of a fair trial.

*Id.*

If we decide that the government's comments were improper we will then "consider the cumulative effect of the improprieties, the strength of the evidence against the defendant, and whether the district court took any curative action." *United States v. Milk*, 447 F.3d 593, 602 (8th Cir. 2006). Then, if still convinced of prosecutorial misconduct, "we will use our discretion to correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Foreman*, 588 F.3d 1159, 1164 (8th Cir. 2009) (internal quotations and citation omitted). Generally speaking, reversal is only warranted where the verdict

could reasonably have been affected by the alleged misconduct. *Eldridge*, 984 F.2d at 947.

The government argues that when defense counsel attacks a police officer's credibility, a responsive argument that addresses credibility is appropriate. *United States v. Franklin*, 568 F.2d 1156, 1158 (8th Cir. 1978) ("With . . . contradictory testimony in evidence, the prosecutor's attack on [the defendant]'s credibility was justified."). We consider the credibility of Officer Smith and Miller important in the trial given that they were the only witnesses present and both DNA experts opined that it was possible for a person to possess a firearm without depositing DNA material on it. As explained *supra*, Part I.C.2, contrary to the government's contention, Miller did not directly attack Officer Smith's credibility or assert that Officer Smith was lying. Miller, rather, suggested that the jury could acquit Miller while still believing Officer Smith's testimony because Officer Smith could have been mistaken.

The government also cites cases that hold that it is not improper during rebuttal for the government to tell a jury that its witnesses were telling the truth. *See, e.g., United States v. Hyles*, 521 F.3d 946, 958 (8th Cir. 2008). However, the government's point misses Miller's argument, which does not question the ability of the government to state that Officer Smith was telling the truth. We find that the government did more than simply bolster the credibility of Officer Smith at closing argument; it insinuated that to find Miller innocent, the jury must believe that Officer Smith is, in the prosecutor's words, "fudging." The government, in essence, argued that in order for Miller to be not guilty, the officer would have to have been dishonest. We have previously found just this type of government argument improper:

> Reed's final contentions deal with the prosecutor's statements during closing argument . . . . While analyzing the credibility of the government's witnesses during rebuttal, the prosecutor argued to the jury that if Reed had told the truth in his testimony the government witnesses must have lied. No objection to this form of argument was made,

-10-

however, until ultimately the prosecutor argued that for the jury to acquit Reed "[they] must determine that Mr. Reed is telling the truth and that all [the government witnesses] are lying to you." This form of argument is improper because it involves a distortion of the government's burden of proof. *See United States v. Vargas*, 583 F.2d 380, 386–87 (7th Cir. 1978). The district court sustained the objection and gave a curative instruction which advised the jury that it was for them to determine why a discrepancy in the evidence exists and that such a discrepancy may occur for innocent reasons.

*United States v. Reed*, 724 F.2d 677, 681 (8th Cir. 1984).

In *Reed*, we found the prosecutor's comments improper, but because of the curative instruction and the strength of the government's case, we ultimately held that the district court did not abuse its discretion in denying a motion for mistrial. *Id.* In this case, there was no curative instruction and no mitigating effect of the government's comments other than restating the proper burden of proof before sending the jury to deliberate.

In another similar case, we again found that the district court adequately mitigated any prejudicial comments, but we still issued this caution:

The government made two other potentially prejudicial comments. Taken in isolation, we believe that the district court adequately mitigated the impact of these other comments through its curative actions. Nevertheless, we strongly recommend that prosecutors not make such comments, and the cumulative effect of these comments added to the potential for prejudice in this case.

Mr. Holmes objected during rebuttal argument when the government told the jury that "to buy the defendant's story you have to believe that Officer Snyder and Officer LeMoine were lying." Mr. Holmes objected that this argument constituted impermissible "burden shifting," and his objection was overruled. Though the testimony of the officers and Mr. Holmes were

-11-

contradictory in important respects, and Mr. Holmes attacked the credibility of the officers as part of his defense, Mr. Holmes proposed the theory in his closing argument that the officers were merely "mistaken" in their perceptions based on the "stress" and "intensity" of the situation. The government's contention that Mr. Holmes's testimony about the gun could be believed only if both police officers were "lying" was, therefore, an incorrect characterization of the dispositive factual issue and of Mr. Holmes's theory of defense.

*United States v. Holmes*, 413 F.3d 770, 777 n.1 (8th Cir. 2005).

Similarly, in the present case, Miller stated that Officer Smith could be mistaken about the gun, not that he was lying. In fact, Miller's counsel specifically told the jury that Miller does not believe Officer Smith lied during his testimony. Thus, Miller did not attack Officer Smith's credibility, making the government's argument at closing improper.

We recognize that the government in *Holmes* told the jury that they had to find that the officers were "lying" and that the government here only used the word "mistaken" and "fudge" when it stated:

> Is [Officer Smith] going to try and *fudge* a little bit and risk a career over the defendant, over something like this . . . .

> If you acquit the defendant here, if you acquit the defendant, you have to think that Officer Smith made a huge mistake, and you have to wonder what his motivation was for making that mistake.

We hold, however, that viewing the argument in context shows the government implied that the jury would have to believe Officer Smith acted dishonestly to acquit Miller. At oral argument, the government all but conceded as much when questioned on this topic:

-12-

Q: You're saying it wouldn't be fair to characterize . . . the totality of your disputed remarks . . . as saying . . . you either have to believe the appellant was lying or you have to believe the officer was lying? Is that an accurate characterization?

A: Your Honor, I certainly came very close to drawing it out in those stark terms.

Such argument is improper.

Additionally, the government made an improper argument when it stated that an acquittal required the jury to find that Officer Smith would jeopardize his future career as a police officer. *See United States v. Combs*, 379 F.3d 564, 574 (9th Cir. 2004) (finding impermissible argument to the jury that the jury could only acquit by finding that agent "risked losing his job"); *United States v. Boyd*, 54 F.3d 868, 871 (D.C. Cir. 1995) (holding that the argument that police officers would not "jeopardize their careers" is impermissible); *United States v. Swiatek*, 819 F.2d 721, 731 (7th Cir. 1987) (stating that the argument that agent had no reason to "risk his career and reputation" was "clearly improper").

As we hold that the government made improper comments, our next step is to consider: "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the trial court." *Eldridge*, 984 F.2d at 946–47. As stated, the district court took no curative actions to mitigate any damage outside of the usual restatement of the proper burden of proof. Additionally, the cumulative effect was high because of the timing of the comments.

While the conduct occurred only during the prosecutor's final rebuttal argument, a single misstep on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated. Because

the remark came during rebuttal arguments, defense counsel was unable
to respond except by objection.

*United States v. Cannon*, 88 F.3d 1495, 1503 (8th Cir. 1996) (internal quotations and citations omitted), *abrogated on other grounds, Watson v. United States*, 552 U.S. 74 (2007).

The district court overruled Miller's objection almost immediately before the case was submitted to the jury. Such timing likely eliminated the possibility that the jury remained somehow immune to the potential prejudicial effect of the comments. *See Combs*, 379 F.3d at 574 (holding that misconduct that occurred "immediately before the jury entered deliberations" destroyed any chance that jury might forget about the error or view it as unimportant).

Finally, we have made clear that an improper argument is less likely to have affected the verdict in a case where the evidence is overwhelming than in a case where the evidence is weak. *United States v. Splain*, 545 F.2d 1131, 1135 (8th Cir. 1976). In this case, the evidence showing Miller possessed a gun may be sufficient, but it is not overwhelming. Besides Miller, there is only one witness—Officer Smith—who provided testimony regarding the object that Miller possessed and threw and there are curious physical evidentiary questions on the existing record related to how Miller could throw a firearm at least 40 feet behind his back to his left, clearing an eight-foot high chain link fence situated 30 to 35 feet away, all while running forward. In addition, Miller's DNA was not on the firearm. The case turned substantially on the testimony of Officer Smith, making the improper comments potentially prejudicial.

Because we hold that the improper comments to the jury related to a central issue in the case and substantially prejudiced Miller's right to a fair trial, the error cannot be harmless. *See Gross v. FBL Fin. Servs., Inc.*, 588 F.3d 614, 617 (8th Cir.

-14-

2009); *M.M. v. Special Sch. Dist. No. 1*, 512 F.3d 455, 459 (8th Cir. 2008). We therefore reverse and remand for a new trial.

B. *Evidentiary Issues*

We briefly address other evidentiary issues raised by Miller because they may recur in a new trial. *See Andrews v. Neer*, 253 F.3d 1052, 1062 (8th Cir. 2001) (addressing objections likely to arise on retrial).

Miller did not object to the government's use of the word "thunk," and we do not believe that the district court committed plain error in allowing the jury to hear the word and permitting the government to argue its distinctiveness. *See United States v. Adamson*, 608 F.3d 1049, 1055 (8th Cir. 2010) ("Because Quintero did not object in a timely manner to the introduction of this evidence, we review for plain error. To establish plain error Quintero must demonstrate that (1) there was an error that he did not affirmatively waive, (2) the error was clear and obvious, (3) the error affected his substantial rights, and (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings.") (internal quotations and citations omitted). Miller's counsel himself used that word in his arguments, opining that the "thunk" sound could have been a metal pipe. Miller argues that the government's use of the word misstated the record because no one testified using that characterization of the sound of the object hitting the ground that Miller threw. Even if that is true, we do not discern plain error on this record for permitting the use of the word. In this context, the use of the word "thunk" likely does not rise to the level of being an "exceptional circumstance" that would warrant reversal. *See United States v. Nabors*, 761 F.2d 465, 470 (8th Cir. 1985) ("If an arguably improper statement made during closing argument is not objected to by defense counsel, this court will only reverse under exceptional circumstances.").

Similarly, we do not find that the district court abused its discretion when it limited Miller's right to cross examination. We agree that "[c]ross-examination of a

witness is a matter of right." *Alford v. United States*, 282 U.S. 687, 691 (1931). However, that right "is not without limitation, even where the subject matter is bias." *United States v. Drapeau*, 414 F.3d 869, 875 (8th Cir. 2005) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). "Limitations on a defendant's opportunity to impeach a witness for bias, moreover, are subject to harmless error analysis." *Id.*

Miller argues that the district court infringed his confrontation right when the court would not allow him to ask questions intended to elicit a confession of bias on the part of the police witnesses. Miller contends that this type of question was intended to demonstrate a critical element in his case. While that may be true, the district court permitted Miller to establish the critical foundation for this disputed question, namely that the police did speak with the prosecution regarding this case but did not speak to the defense investigator. The district court's limitation is not an abuse of discretion because the limitation did not preclude defense counsel from challenging the witnesses' credibility—nor did it prevent Miller from arguing bias in his closing. During the cross examination of each of the police officers, defense counsel was able to elicit that the officers met with and discussed their testimony with government counsel, but declined to talk with defense counsel.

Finally, "[b]ecause we remand the case for a new trial, we need not consider whether there was sufficient evidence for a hypothetical jury . . . to return a verdict in favor of [the government]." *Gross*, 588 F.3d at 622; *see also Combs*, 379 F.3d at 576 n.3 ("Because we hold that prosecutorial misconduct rendered Combs's manufacturing conviction invalid, we need not reach his alternative arguments that (1) there was insufficient evidence to prove that he manufactured in excess of 500 grams of a mixture containing methamphetamine . . . .").

### III. *Conclusion*

We reverse Miller's conviction and remand for a new trial.

_____

-16-